21-5024, Copeland v. I hope they do this acronym correctly, C.A.A.R. Counsel for Appellant, would you please proceed? Yes, Your Honor. This is Bob Blakemore. Good morning. I represent one of the lawyers representing the plaintiffs in this case, Arthur Copeland et al. The plaintiffs are a group of former criminal defendants who entered an ostensible drug and alcohol treatment program as part of state court plea agreements. In reality, the plaintiffs were placed in a work camp, the C.A.A.R. program in the guise of a drug and alcohol treatment center and forced to provide uncompensated hard labor for of defendant Simmons Foods, which is a large poultry integrator headquartered in western Arkansas. Mr. Blakemore, can I just back up for a second and just ask sort of an overarching question here? My understanding of Wicker-Feldman analysis is it's a claim by claim analysis. I have not discerned any attempt by either you or Appellees to disaggregate your claims and address them on a claim by claim basis. My question for you is simply, is it your view that all of your claims stand or fall under Wicker-Feldman on the same ground? In other words, there is no point of distinction between them for purposes of Wicker-Feldman application or not? Yes, I mean, I believe that and as we state in our briefs, it is across the board that the injuries that are being claimed, and that's the standard under Exxon Mobil, the injuries that are being claimed by plaintiffs in this case were not caused by the state court judgments themselves, rather we are alleging that the source of the injury was the unlawful conduct of the defendants under all the claims. Now, yeah, I mean, I get that and I just want to be clear because if you look at the cases, including cases you cite, I mean, those courts and particularly the cases you cited in your brief, those cases go claim, those courts go claim by claim, and I'm not saying there's a distinction, I just want to be clear that in your mind, because some of your claims focus more on the wages, we didn't get our, you know, FLSA claims, we didn't get our full wages, other parts of your claims go on this sort of we were indentured servitude type situation, we were, you know, forced labor, that kind of thing. And so I just wanted to be clear that at least in your mind, the same Wicker-Feldman application applies to these claims across the board, they stand or fall? I believe so. I believe it's across the board. All right. Okay, just want to be clear. On your point about the nature of the injuries and the fact that the injuries, in your view, do not stem from the state court judgments, as I understand it, your position is that they're really third party non-governmental actors here that and they are the source of the injuries. Well, how do you square that with the notion that the compulsion, if you will, stems from the state court judgments? In other words, the jail time hanging over your client stemmed from the state court judgments, and therefore, you know, and the care, the care paperwork makes it clear they can leave if they want. So the reason if they stayed and incurred work for which they were not compensated, and if they stayed and engaged in essentially forced labor, weren't they doing that just because the state court judgment told them that they didn't do it, they'd go back to jail? No, your honor, I don't believe so. And again, when you look at the orders themselves, and as we stated in the briefing, these are innocuous orders that use language such as inpatient treatment, treatment order, they're ordered to rehabilitation at care. This paperwork, that's not part of the order, that's part of what care has the discretion and Simmons have the discretion to impose as part of its program, up to the point that they violate state and federal law, but the orders themselves are not the source of that. And I think our claims... If that's true, if that's true that the compulsion is not coming from the state court orders, why didn't all of your clients just leave? I mean, they were free to leave and just go back to the state court and say, no, what I... This isn't what I had in mind, I'll just take my medicine, go ahead and sentence me. Well, your honor, they were not free to leave because they were under constant threat from care and Simmons that if they did not perform the work, usually over 40 hours a week of hard labor with no alcohol and drug treatment or rehabilitation, that if they did not perform this work up to their standards, even if they became injured, if they were unable to perform the work, then you're going to jail. And that... I mean, but that's the whole point is you're saying it wasn't the threat of jail, it wasn't the compulsion by the state court order that said, if you don't complete this, you're coming back and I'm sentencing you to five years, say in the penitentiary. That's what was driving all of this was the fact that they had an alternative to do the work at cares or go back. And they didn't want to go back because the state court order said that if you fail to complete it, we're going to put you in the penitentiary for five years, or at least the judge's statements on the record. So the compulsion for them staying was definitely the state court order. But again, the state court orders were to go to a treatment program. What was being imposed, the state court orders did not order care and Simmons to require the defendants to require them to be in an illegal work camp in the guise of a treatment program. Those orders did not mandate that defendants force plaintiffs um to work over 40 hours a week without any compensation. Did the order require them to go to care? The orders required them to complete a treatment program. Did it require them to go to care? Yes, sir. Through care, a treatment program through care. All right. And if that was the key, then aren't they appealing essentially the requirement to go to care? No, sir. They're what we are appealing again. They signed a contract that agreed that they wouldn't get paid and everything else. That's another issue. But what precipitated them going to care? Yeah. Whether they got anything good or not, a plea agreement that did not specify that they would be uh being, they would be treated in violation of federal labor law. No, I understand that. But it was required that they go to care, not to not to the uh molbeck uh place or to the smith place but to care. It was care. Again. Thank you. So this seems to me, this this seems to me to be something akin to well maybe not a direct attack on the order as a whole. Maybe an attack on the conditions of some of the some of the conditions of the order. So the order says you're going to go to care and and they and your clients all agreed to that in lieu of going to prison. And now it seems that what they're saying is we agreed to go to care but we didn't agree to do all the things they wanted us to do as part of that program. And so it seems to me that it's something you know it's sort of a de facto attempt to modify the state court judgment. I don't think so, I think it's akin to a a conditions of confinement case under section 1983 for a violation. Why didn't you bring that? Could you could you have brought that? A 1983 claim? Right. We we brought uh we looked at that um but that that's what this is akin to. In other words, what we are complaining about is not the fact that they were ordered to a treatment program. But if you in the eighth amendment context when a prisoner is convicted there's an order sending them and sentencing them to prison. But if once that that he's denied adequate medical care or subjected to excessive use of force that's not a Rooker-Feldman issue. That's a separate issue based on the conduct of third parties. And when you're looking at under Rooker-Feldman the conduct of a third party um then it's not Rooker-Feldman does not apply. Mr. White, let me just ask a couple clarifying questions. If you're not then in your view you are not challenging an order that required them to go to work-based treatment? Because that's what somebody at least the language of the of the that was quoted in the briefs and the and the colloquies that went on with the with these plaintiffs it was clear that the court was sending them to work-based treatment. Now that that note that doesn't necessarily mean working more than 40 hours a week. That doesn't necessarily mean not getting paid all that. But but but you're not trying to overturn orders or are you orders that requires judgments state court judgments that require them to go to a work-based treatment program? No your honor there is part of I think one of the the plaintiffs Mr. Blue where there is a lengthy discussion in the transcript with the judge talking some about the work-based and some aspect of that no we're not we're not saying that that's that's wrong or illegal. It's the illegal conduct of the defendants. I get that it well it's a critical point here that I understand because these the one can construe these state court judgments as saying you say generic treatment program well the treatment program could include a work component. So my point is are you are you questioning the fact that they sent them to a work-based treatment program or are you questioning all of this other stuff like they didn't let you know they they got they when they were ill or when they got hurt they didn't take care of them and they you know they they all of these things these other evils associated with the work-based program. In other words would you be here complaining if they could have took them to a work-based program treated them you know fed them well gave them hygienic conditions and all of those sorts of things would you still be making an argument here that there's a problem? No it's a if it's a work-based program that doesn't violate the law then no if it's if it's the again the conduct of these defendants and violating wage law human trafficking law that was not part of the order that those are distinct acts of these defendants which takes it outside I think clearly takes it outside of uh Brooker Feldman. Let me let me ask you a question quickly oh I'm sorry go ahead after you that while we have time here on on the Bolden decision uh I I just want to focus on two aspects of that and ask you whether this case how this case intersects with those the two aspects that I'm interested in one there's language in Bolden that says the allegations of plaintiff's complaint would have been the same even if there had not been state court proceedings a state court judgment uh and and my question to you first is is that your case or is it not? Yes. And how so? Well if um if we were um these plaintiffs were placed in this work camp. Yes but I mean but if there wasn't a state court judgment would they still be would if somebody told me you're not going to pay you uh would would you still be there if there wasn't this threat of incarceration hanging over your head? I mean so doesn't the state court judgment have some connection to these allegations? Yeah there again there's there's some connection just like there's some connection between a conviction um and an eighth amendment claim I mean that there but but the question is whether the injuries were actually caused by the the judgment they were not Okay second aspect of Bolden quickly that I want to get to and I know you're uh almost out of time uh and I'll uh take that into consideration uh as we play out but the second aspect I want to get to is Bolden drew a distinction between the state court judgments permitting the city to go forward with the demolition as opposed to requiring the city to go forward with the permitting and requiring play out here relative to the state court judgments and the actions of the third parties? Well I think here again the the the defendants were given wide discretion as to how they were going to implement this program but uh you can't read into those orders that they were uh required to violate the law um and that they were required to uh violate our our client's rights. That's that's that's again why it's outside of uh worker development. All right thank you Mr. Blakemore. Uh we'll hear from Appalee now. Good morning your honors uh John Rule of the Gable Doutwall's firm in Tulsa. We represent the Simmons defendants. I'm speaking this morning on behalf of all the defendant Appalees. At bottom plaintiffs argue it was wrong for the state courts to order them either to complete the care program or else go to prison. The alleged injury that's being uh is being forced to work without pay under threat of incarceration and the only relief or redress that the class plaintiffs are seeking on their claims is unpaid wages and related penalties interest fees and cost. It was the state court orders that caused the plaintiffs to work without pay under threat of incarceration. Mr. Rule let me let me ask the same overarching question that asked um uh uh Mr. Blakemore. Uh generally these worker founding cases when you look at them they go on a claim by claim basis. Uh I take it is it your view that essentially this is uh that all of these claims stand or fall under the same sort of uh analysis. In other words there there is no uh there would be no material distinction to be had by distinguishing between the claims. Well I acknowledge your honor that the cases do look at it on a claim by claim basis and I'm prepared to do that this morning. But running through all of these claims as to the class plaintiffs allegations is the the fact that they're seeking relief unpaid wages for having been forced to work without under threat of incarceration. That that holds through on that holds true on the TBPRA claims the wage claims and every other claim that's here. Well I thought some claims just involve forced labor. I mean they didn't they didn't bespeak wages. I mean there are wage claims per se. I worked and I didn't get paid. I worked over 40 hours and I didn't get paid. But there are some claims that involve just the notion you were working under coercion. Right? I mean like those just sort of indentured servitude essentially. But even there your honor it's a situation where the the the injury that's alleged is being forced to work without pay. And it's the state court orders that put them in the position of having to work without pay. And so running through all of the plaintiff's claims is this this underlying theme that it was the state court order that caused them to work without pay under threat of incarceration. Okay let me let me let me ask you a question here that and this is a hypothetical. We'll see how it works. If you under these same situations if you had a state court judgment and I was as a result of that state court judgment I sent you to a treatment program specifically care. Okay or let's just use another treatment program. I sent you to a treatment program that was supposed to be a work-based treatment program. And as a consequence at that work-based treatment program those individuals waterboarded you. That was part of their therapeutic method of trying to get you right and make sure that you would then lead a lawful life. I mean would is it would that claim the claim based upon the waterboarding would that be barred by Rooker-Felman too? No I don't think so your honor. And why not? Because that would be a case like Brown versus Taylor where the state order didn't cause the actual injury that the plaintiff is complaining about in the case. Here at the bottom of all of the class plaintiffs claims is is not being paid for what they did in the program. Each state did the judgments the judgments didn't say anything about whether you would be paid or not paid did they? What the what the order said was you will either complete care or go to prison. On this record it's clear that the sentencing courts were that they would not be paid and that they would not be deemed employees in the face of and and and the proper inference from the fact that each sentencing court was so informed is that the court knew that. Well I saw when you had one fair citation in your brief to record 1109. Yes. A going with that that's a that's a very slim read it seems you need to hang on the notion that court was informed nobody said in the actual orders themselves in the judgments that you aren't going to get paid did they? Oh I think it's absolutely clear that the that the sentencing courts knew here that that was a feature of the program. If you if you look at that record site it says that care similarly advises all referring authorities about the things that Mark had said including you're not an employee you're not going to be paid you're going to work and and and your honor is a copy of the of the packet the information packet that was given to the state courts if you go through that it it has those same features it also talks about AA, NA, counseling sessions, individual counseling sessions, I mean these these state courts knew. Well I well I did go through it but and and and the point I'm but let's back up for a second because it seems to me that the underlying argument here is that that is being made is that this wasn't a treatment program that this was a sham and that that you know that that essentially they didn't provide them any treatment at all and that it was just a it was just a work camp that's the argument and if that's the argument they're making let's let's let's take this and again we're moving from Europe because I don't want to focus on your client but let's say an analogous situation where you you tell the court this is what I'm going to do I'm going to you know rehabilitate them we're going to have we're going to have bible studies we're going to have counseling session then when that individual gets there they say we're not going to have any of that all we're going to do is make it work well in that situation that aspect of forced labor is under that is not under the rubric of what the court ordered is it that may be the case your honor but I want to point out here that the plaintiffs I mean the plaintiffs put on no evidence regarding not getting treatment in the program of not getting counseling any of these things that they've alleged they put on no evidence whatsoever the unrebutted evidence here is that the state courts sent the sent these people to this program knowing I submit knowing that they were not going to get paid for what they did and that they were not going to be deemed employees well not presenting evidence raises an interesting issue I mean did you present evidence that as to not only the requirements that were laid out in the packet but that in fact in fact these individuals received this therapeutic aspect that was purported to exist in the bill your honor we do well then then it then one would wonder why we are not supposed to look at the averments of the complaint it's one thing if you put forward evidence that contradicts the averments of the complaint but if you don't then those averments of the complaint should have some power shouldn't it I think here the burden was on the plaintiff to show the jurisdiction that but what the point would be that they are doing that in part by the averments of their complaint well I don't think the averments satisfied their obligation once we put in the record evidence that showed that the subject matter jurisdiction did not exist but if I understood correctly you didn't have any evidence that spoke to this issue of what is the actual therapeutic nature of the program did I misunderstand no you didn't but but the issue of whether there therapeutic treatment was was not the issue regarding the damage that was caused by the state court orders here I mean well why isn't it the plaintiffs your honor here are not alleging I mean we think frankly they've waived any claims for how they were treated in the program for reasons that I'll explain this briefing on the 12b1 motion was against the backdrop of the to file a third amended complaint that that motion was filed in March of 2020 and then in July of 2020 the plaintiffs filed their third amended complaint at no time before the court entered its order in December of 2020 did the plaintiffs explain that something in their third amended complaint changed the Rooker Feldman analysis indeed in footnote one of their opening brief here they said there isn't anything in the in the third amended complaint that changes the Rooker Feldman analysis we went back and looked your honor at what they said in the motion for leave to file the third amended complaint that's in the record at page 1460 and at page 1462 here's what they said and I'm quoting the proposed class representatives seek only to recover economic damages unpaid minimum and overtime wages in addition to attendant statutory penalties interest attorney's fees and costs on behalf of the proposed 23 rule 23 class these economic damages they said are recoverable under all of plaintiff's claims and therefore liability as to all claims can be decided in a class trial they went on to say that all named plaintiffs in a bifurcated trial will seek to recover additional non-economic damages on their individual behalves such as personal injury pain and suffering emotional distress etc now in their rule 59 briefing below and in their briefs in this in this court and indeed as council said this morning they're they're not drawing any distinction between any of their claims for purposes of their appeal and well mr rule I think we're we're shifting from the point that that that I was making which is if I'm looking at their second amended complaint and if their second amended complaint essentially avers that that this was a fraud that that that were told that that that this was a treatment program and maybe had a work component but this was a treatment program and when they got there there was no treatment and there was only work and there was work under harsh conditions well if the point would be that that if if you don't have evidence in the record that says that this is the contours of our program this is what we actually did then we're then there we're looking at the uncontradicted averments of their second amended complaint right your honor I don't think there's a broad exception for Rooker Feldman and and so basically no I don't agree that that the court looks here at whether or not treatment was provided or not for purposes of whether Rooker Feldman applies I simply don't agree okay well I I guess what what we're looking at is sort of the Brown versus Taylor situation that's what I want to get your response to because it I think what the point would be that the averments of their complaint are such to suggest that when they got there they got a lot of stuff that was not within the contemplation stuff and I use that term loosely that was not good stuff when that in the contemplation of and was distinct from separable from the judgment and and and the point is is there any evidence to indicate that the the nature of the program was as such that it was it was what the care people purported it was supposed to be there's no evidence the other way well well that's not the point I mean right I mean and and let's just think it is the point okay then let's ask as a legal matter when you're in a situation when you're making a factual challenge on jurisdiction are you not you can controvert their averments I don't question that but if you don't controvert their averments i.e put evidence in to controvert them are we not stuck with their averments judge I want to stress this point this court looks at causation injury and redress to determine whether or not Rooker Feldman applies the injuries the class plaintiffs are seeking here are unpaid wages that's what they focused on that's what they told the district court they were after the district court analyzed this case from that redress and from that alleged injury having having forced to work without pay under threat of incarceration and the district court found based on unrebutted evidence that the state court judgments caused those alleged injuries for which they're seeking redress that means under this court's teachings the Rooker Feldman doctrine applies the state court orders have to be overturned overturned in order for the plaintiffs to prevail on the injuries they've told both the district court and this court they're seeking to about the notion of whether you're going to get paid or not they speak to the notion of you going to care on to to this work-based program against the backdrop of the courts having been told the plaintiffs won't get paid and aren't deemed employees uh I just think it's I just think it's very clear here but both both as a matter of reality in the record that the state court the state court judgments caused the injuries for which plaintiffs are seeking redress and for that reason Rooker Feldman applies if the court doesn't have further questions for the reasons we've stated in our briefs in our brief and today we think the the district court's order should be affirmed you know let me let me I'm not going to let you go yet okay I mean my further question relates to your contention about this being under a clear error standard I in terms of the notion of causation when I look at the cases I'm not sure that's true and this is what I want to focus on for a second if the issue is essentially causation in some of our cases are is treated as the point of whether it's an essential part of the claim that the state court judgment was wrong that that that becomes part of this sort of causation analysis and if that is so isn't causation really determining looking at the the import of the state court judgment and looking at the import of the claim and that's not a factual determination isn't that's a legal determination well I think you're right that it may be a situation where it's a mixed question of law and fact judge here the district court found as a matter of fact the state court judgments caused the plaintiffs injuries ultimately the court has to make a determination of whether that kind of cause is one that brings this case within Rooker Feldman that turns on whether whether the relief the plaintiffs are seeking which would undo in essence the state court judgment this case is very much like market against city of garden city in our view where the plaintiff they're claimed look I'm not challenging the municipal court judgments I'm challenging the enforcement mechanism and the panel it's not a binding case we understand it's not binding on on the court here but it's instructive I mean just like Ms. Market was seeking to undo the municipal court judgments by getting compensatory damages for the time she spent in prison here the plaintiffs are asking for back wages that that that the courts knew we submit they were they were not going to get under the program they were going to and and so we think that in essence they're seeking to undo the state court judgments all right thank you Mr. Rule Mr. Blakemore did he have any time and I'm inclined to give him a minute just oh you had a minute good no you didn't have a minute uh give Mr. Blakemore a minute please yes sir I'd just like to briefly address the market case uh we don't think that that's uh for one as uh Mr. Rule stated it's not a published decision secondly that's a case in in which the plaintiff was really challenging directly the sentence itself on its face in other words that um she was sentenced to a longer jail term um than uh was required under the the state law uh minimums um our case is is different and that again on their face these are innocuous orders what we're challenging is the actual conduct of the defendants illegal conduct of the defendants um after those orders were entered um so that's different one other thing you mean that these orders did not contemplate that they would not that they would not get paid I mean that's part of it that's yes and and again they were treatment orders okay okay we understand your position all right thank you sir all right thank you uh thank you Mr. Blakemore thank you for your arguments case is submitted